*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0103p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DOMINIC CATALDO, et al.,
            *Plaintiffs-Appellants,*

            *v.*

UNITED STATES STEEL CORPORATION;
UNITED STATES STEEL AND CARNEGIE
PENSION FUND; UNITED STEELWORKERS OF
AMERICA, a.k.a. United Steelworkers; and
USX CORPORATION, et al.,
            *Defendants-Appellees.*

No. 10-3583

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 09-01253—Dan A. Polster, District Judge.

Argued: October 6, 2011

Decided and Filed: April 13, 2012

Before: MARTIN and GRIFFIN, Circuit Judges; ANDERSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Mark W. Biggerman, Pepper Pike, Ohio, for Appellants. Rodney M. Torbic, UNITED STATES STEEL CORPORATION, Pittsburgh, Pennsylvania, David M. Fusco, SCHWARZWALD, McNAIR & FUSCO, Cleveland, Ohio, for Appellees. **ON BRIEF:** Mark W. Biggerman, Pepper Pike, Ohio, William A. Carlin, CARLIN & CARLIN, Pepper Pike, Ohio, for Appellants. Rodney M. Torbic, UNITED STATES STEEL CORPORATION, Pittsburgh, Pennsylvania, David M. Fusco, SCHWARZWALD, McNAIR & FUSCO, Cleveland, Ohio, Stanley Weiner, Johanna Fabrizio Parker, Michael M. Michetti, JONES DAY, Cleveland, Ohio, Sasha Shapiro, UNITED STEELWORKERS INTERNATIONAL UNION, Pittsburgh, Pennsylvania, for Appellees.

_____

[*] The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.   Plaintiffs are 225 individuals currently or formerly employed at steel mills located in Lorain, Ohio.  They claim that their union, employer, and plan administrator violated provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, and Ohio's common law by intentionally misleading them regarding how pension benefits would be calculated, inducing some to retire early.  The district court dismissed the claims, concluding that certain of the ERISA claims were time-barred, that the others failed to state a claim for relief, and that the common-law claims were preempted by federal law.  We affirm.

I.

The following facts are accepted as true for purposes of this appeal.  *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010).

Plaintiffs work or used to work at steel mills located in Lorain, Ohio (the "mills" or the "Lorain Works").  At all times relevant here, they were represented in their collective bargaining efforts by the United Steelworkers of America ("USW").  They are eligible participants in an employer-sponsored pension plan governed by ERISA.

The mills have changed ownership many times in the last two decades.  Before 1989, defendant U.S. Steel Corporation ("U.S. Steel") owned them, and plaintiffs' pension plan was administered by defendant United States Steel & Carnegie Pension Fund (the "Fund").  U.S. Steel sold the mills in 1989 to Kobe Steel, Ltd., at which time Kobe Pension Fund began administering the plan.  The mills were sold again in 1999, this time to Lorain Tubular Company, LLC, and the Fund resumed administration of plaintiffs' pension plan.

While U.S. Steel and (later) Kobe Steel owned the mills, plaintiffs' pension benefits were determined in the same way benefits were determined for employees

working at other U.S. Steel-owned mills.  Specifically, benefits were calculated based in part on a percentage of total wages earned during the five years in which the plan participant earned the highest annual income, without regard to whether the years were consecutive to one another (the "best five years method").  In 1999, however, when Lorain Tubular bought the mills and the Fund became the plan's administrator again, a cut-off date was established so that the best five years could include only those years up to and including 1999.  Thus, income earned in 2000 and beyond – which for many employees was higher than in past years – could not be considered in the benefit calculations.

In 2001, Lorain Tubular merged into U.S. Steel, and plaintiffs once again became employees of U.S. Steel.  Based upon promises made in 2003 by persons or entities plaintiffs do not specifically identify in the complaint, plaintiffs became "hopeful" that, as employees again of U.S. Steel, they would be treated like all other U.S. Steel employees with respect to their pension benefits, meaning that their "best five years" would no longer be limited to the years before 2000.  Plaintiffs were later told, however, that the current formula for calculating pension benefits would remain in place.  At no time was the pension plan amended to reflect the alleged promises.

Around this time, U.S. Steel offered its employees the opportunity for early retirement through its "USS Transition Assistance Program for [USW] Represented Employees," or "TAP."  Employees who chose to participate in TAP would receive a lump sum payment and "a significantly more favorable pension calculation" than under the then-current regime.  Plaintiffs sought assurances from U.S. Steel, the Fund, and USW that Lorain Works employees who chose to participate would receive the same TAP benefits as U.S. Steel employees in other mills who retired under TAP.  "[O]ne or more" defendants promised they would.

In reliance on defendants' assurances, some of the plaintiffs chose to retire under TAP.  But after doing so, they immediately began to receive significantly less than they expected and less than TAP retirees from other steel mills were receiving.  Meanwhile,

plaintiffs who retired after 2003 (not under TAP) have continued to receive pension benefits calculated using only years before 2000.

Plaintiffs who are still employed at the Lorain Works have inquired with defendants regarding the benefits they are to receive upon retirement and have asked for assurances that there is adequate capital in the plan to "ensure proper benefits upon retirement." "Yet, they consistently receive incorrect benefit determinations and vague and inadequate responses."

Plaintiffs filed the instant action on June 1, 2009, and asserted the following claims: (1) breach of ERISA fiduciary duty; (2) ERISA equitable accounting, restitution, and other equitable relief; (3) equitable estoppel; (4) failure to furnish requested plan documents; (5) common-law fraud; (6) common-law negligence; (7) common-law breach of fiduciary duty; and (8) common-law promissory estoppel. Defendants moved to dismiss plaintiffs' claims for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The district court granted the motions and dismissed all of plaintiffs' claims. Plaintiffs timely appealed.

## II.

"We give fresh review to a district court's order to dismiss a claim under Civil Rule 12(b)(6). In doing so, we accept all allegations in the complaint as true and determine whether the allegations plausibly state a claim for relief." *Roberts ex rel. Wipfel v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011) (internal citation and quotation marks omitted).

## III.

The district court concluded that plaintiffs' claims against U.S. Steel and the Fund for breach of ERISA fiduciary duty were time-barred. We review that conclusion de novo. *Friends of Tims Ford v. Tenn. Valley Auth.*, 585 F.3d 955, 964 (6th Cir. 2009).

The statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim, *see* Fed. R. Civ. P. 8(a) (requiring "a short and plain statement *of the claim*" (emphasis added)); *Jones v. Bock*, 549 U.S. 199, 216 (2007). For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, as it is here, dismissing the claim under Rule 12(b)(6) is appropriate. *See Jones*, 549 U.S. at 215 ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

ERISA contains a statute of limitations that governs "action[s] . . . with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part [29 U.S.C. §§ 1101-1114], or with respect to a violation of this part[.]" 29 U.S.C. § 1113.[1] The parties agree that this provision applies to plaintiffs' fiduciary-duty claims.[2] Simplified somewhat, the statute requires that a claim be brought within three years of

---

[1]The entire statute of limitations reads as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

[2]Although the complaint is not clear on this point, we assume for purposes of this analysis that plaintiffs are not asserting a right to individual benefits under § 1132(a)(1)(B), to which we would apply the most analogous state statute of limitations rather than § 1113. *See Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194-95 (6th Cir. 1992) (applying Ohio's fifteen-year limitations period for breach of contract claims to a plaintiff's claim for benefits); *see also Kennedy v. Electricians Pension Plan*, 954 F.2d 1116, 1120 (5th Cir. 1992) ("Congress limited the application of § 1113 'to suits claiming breach of an ERISA trustee's fiduciary duty "under this part," which does not include beneficiary suits under § 1132(a)(1)(B).'" (quoting *Johnson v. State Mut. Life Assurance Co. of Am.*, 942 F.2d 1260, 1262 (8th Cir. 1991))).

the date the plaintiff first obtained "actual knowledge" of the breach or violation forming the basis for the claim, but in no event later than six years after the breach or violation. *Id.* "Actual knowledge" means "knowledge of the underlying conduct giving rise to the alleged violation," rather than "knowledge that the underlying conduct violates ERISA." *Wright v. Heyne*, 349 F.3d 321, 331 (6th Cir. 2003). Pointing to plaintiffs' allegation that they learned in 2003 that they would not receive the benefits they were allegedly promised, the district court concluded that plaintiffs had to file within three years of that time, or in 2006. Because they filed in 2009, three years after the limitations period expired, the district court found the claims time-barred and dismissed them for failure to state a claim.

Plaintiffs contend that the district court applied the wrong limitations period – that it should have applied a six-year period instead of a three-year period because they assert fraud in count one. The final clause of the statute of limitations provides: "except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation." 29 U.S.C. § 1113. If plaintiffs' fiduciary-duty claims fall within this clause, they were permitted to file no later than "six years after the date of discovery of [the] breach or violation." *Id.* There is no serious dispute that plaintiffs' claims are timely if a six-year limitations period is used.[3] The question, then, is whether this is a "case of fraud or concealment."

The parties' disagreement concerns a question of statutory interpretation. U.S. Steel and the Fund contend that the fraud-or-concealment exception applies *only* in situations where the fiduciary has attempted to hide its breach from the injured party, *i.e.*, only where there has been "fraudulent concealment," and not simply where the underlying breach sounds in fraud. Plaintiffs, by contrast, take a literal approach and read the exception to apply exactly when it says so: in cases of fraud *or* concealment,

---

[3]The promises upon which these claims are based were allegedly made in early 2003, and plaintiffs learned the promises were false later that year. The complaint was filed on June 1, 2009. Although the complaint does not identify the specific dates on which the misrepresentations were made, U.S. Steel and the Fund do not argue that plaintiffs failed to file within six years of discovering the violation.

meaning that a six-year period applies to claims of fiduciary fraud even absent later acts of concealment.[4]

We have not squarely considered this issue before. The parties say otherwise, but we disagree with their characterization of our precedent. Plaintiffs, for their part, rely primarily on our statement in *Tassinare v. American National Insurance Co.*, 32 F.3d 220 (6th Cir. 1994), repeated in *Wright*, 349 F.3d at 327, that a "plaintiff with actual knowledge of a *non-fraudulent* breach of ERISA fiduciary duties must file suit within three years." *Tassinare*, 32 F.3d at 223 (emphasis added). By implication, plaintiffs reason, a *fraudulent* breach would be subject to a six-year limitations period. Although we agree with the logic of that position, we cannot agree that this one statement in *Tassinare*, a case that involved no allegations of fraud or concealment, represents our considered view on the matter. Nor did we address the issue in *Rogers v. Millan*, 902 F.2d 34, 1990 WL 61120 (6th Cir. May 8, 1990) (per curiam) (unpublished table decision), when we said "the six-year period can be reduced to three years if there is no fraud or concealment and the defendant can show that the plaintiff had actual knowledge of the breach or violation." *Id.* at *2. That statement merely summarizes the statute; it provides no analysis of the fraud-or-concealment clause.

For their part, U.S. Steel and the Fund cite *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002), as directly supporting their proposition that "the three-year limitations period is not circumvented by allegations of fraud that support a breach of fiduciary duty claim . . . but rather by allegations that the fiduciary has attempted to *hide the alleged breach* from the party bringing the action." The citation is completely off the mark and slightly misleading. The relevant line from *Browning* is: "In order to invoke the doctrine of fraudulent concealment, affirmative concealment must be shown; mere silence or unwillingness to divulge wrongful activities is not sufficient." *Id.* at 770 (citation, internal quotation marks, and alterations omitted). By citing *Browning* for the proposition they do, U.S. Steel and the Fund have merely assumed the point they must

---

[4]Although the complaint contains allegations of "concealment," they are wholly conclusory, and we do not consider them. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

prove: that the clause applies *only* in cases of fraudulent concealment. The citation to *Browning* is particularly inapposite given that we never even mentioned in that case the statute we are interpreting here.

One week after briefing in this case was complete, we issued *Brown v. Owens Corning Investment Review Committee*, 622 F.3d 564 (6th Cir. 2010). U.S. Steel and the Fund promptly brought the case to our attention, claiming that it definitively answers the question we consider today. In their Rule 28(j) response letter, plaintiffs agree that *Brown* answers the question, but ask us not to follow it because it conflicts with our earlier decisions in *Tassinare*, *Wright*, and *Rogers*. *See* 6th Cir. R. 206(c).

We disagree with the parties' reading of *Brown*. U.S. Steel and the Fund seize upon the following line in *Brown*: "ERISA's fraud exception to the statute of limitations 'requires the plaintiffs to show (1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, (3) despite their exercise of diligence.'" 622 F.3d at 573 (quoting *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994)) (alteration in original).

Insofar as this line purports to set forth the entire set of circumstances in which the clause can apply, it is dictum because doing so was not necessary to our holding in *Brown*. *Cf. United States v. Stevenson*, — F.3d — , 2012 WL 573326, at *3 (6th Cir. Feb. 23, 2012) (concluding that a passage in an earlier published decision unequivocally answering the issue presented was dictum because it was unnecessary to the holding). The precise issue considered in *Brown* was *when* the plaintiffs obtained actual knowledge of the facts that gave rise to the fiduciary's alleged breach of duty. We agreed with the district court that the plaintiffs learned of the facts more than three years prior to filing suit, rendering their claim time-barred. *Brown*, 622 F.3d at 570-73. We further agreed that the plaintiffs' request to amend their complaint to allege that the fiduciary took steps to hide or conceal their earlier breach was futile. *Id.* at 573-74. It was during this discussion that we articulated the above test for the fraud-or-concealment clause. We found the proposed allegations foreclosed a claim of fraudulent concealment

because most of the alleged actions taken by the fiduciary to cover up the wrongdoing occurred *after* the plaintiffs received actual knowledge of it. *Id.* at 574. And the fiduciary's alleged conduct pre-dating the plaintiffs' actual knowledge did not rise to the level of concealment. *Id.* We had no occasion in *Brown* to consider whether a claim of fraud, by itself, would be subject to the six-year period because the plaintiffs never pressed such a claim; they claimed that the defendant fiduciary failed to divest the plaintiffs' retirement plans of company stock before it became worthless, a *non-fraudulent* breach of fiduciary duty. *Id.* at 568, 574. *Brown*'s discussion does not bind us.

Nor do we agree with the conclusion other circuits have ascribed to our earlier cases, indicating that we have interpreted the statute in the way U.S. Steel and the Fund would have us do. Specifically, our decision in *Farrell v. Automobile Club of Michigan*, 870 F.2d 1129 (6th Cir. 1989), has been cited by both the District of Columbia and Seventh Circuits as indicating that we have taken sides on a circuit split on the issue and favor the position taken by U.S. Steel and the Fund. *See Larson*, 21 F.3d at 1172 n.15; *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990). It is unclear which passage in *Farrell* these courts rely upon. Regardless, *Farrell* does not answer the question here.[5] The plaintiffs there did not assert that the six-year period applied, even though their claim sounded in fraud. *See id.* at 1130-31. They instead argued that they obtained actual knowledge of the violation within three years of filing. We found that the evidence showed the contrary – that the plaintiffs learned of the breach more than three years before filing. *Id.* at 1131-32. Yet we held that, because plaintiffs had filed an identical claim in state court within three years of learning of the alleged violation, the limitations period was equitably tolled while the state claim remained pending. *Id.* at 1134 (applying *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424 (1965)). *Farrell*, too, does not bind us here.

Therefore, whether a six-year limitations period applies in instances where the claim is based upon fraud and there are no allegations of separate conduct undertaken

---

[5]Indeed, no party before us cites *Farrell* in support of their respective positions.

by the fiduciary to hide the fraud is an open question in this circuit. Although some other circuits have concluded that it does not apply in such situations, *see, e.g.*, *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 503 (3d Cir. 2001); *Radiology Ctr.*, 919 F.2d at 1220-21, the Second Circuit has provided a persuasive contrary interpretation. *See Caputo v. Pfizer, Inc.*, 267 F.3d 181, 188-90 (2d Cir. 2001).

We need not takes sides on the split at this time, however, for even were we to conclude that the exception applies in such situations, plaintiffs have failed to sufficiently plead fraud in this case. Any discussion on the matter therefore would be dictum, and we decline to opine unnecessarily. *See United States v. Hardin*, 539 F.3d 404, 415 (6th Cir. 2008) (noting that "when the facts of the instant case do not require resolution of the question[,] any statement regarding the issue is simply dicta" (citation and internal quotation marks omitted)); *cf. Souter v. Jones*, 395 F.3d 577, 589 (6th Cir. 2005) (reserving the determination of whether an actual innocence exception to the federal habeas statute of limitations exists until finding that the petitioner could satisfy the exception if it did). Abstaining is particularly prudent here because the allegations of fraud are woefully inadequate (as we discuss below), the briefing on the question was minimal, the issue was not litigated vigorously below, and the question is a rather complicated one. Therefore, we assume, but do not decide, that a claim of fiduciary fraud not involving separate acts of concealment is subject to a six-year limitations period that begins to run when the plaintiff discovered or with due diligence should have discovered the fraud.

Plaintiffs have not adequately alleged any underlying fraud. To be sure, the primary theory of liability contained in plaintiffs' fiduciary-duty claims does sound in fraud.[6] Specifically, plaintiffs allege that those who retired under the TAP program did so in reliance upon defendants' false representations that plaintiffs' retirement benefits would be calculated the way other U.S. Steel employees' benefits were calculated.[7] *See*

---

[6]It is unclear what other theories of fiduciary liability (if any) are contained in count one.

[7]The other plaintiffs do not allege any detrimental reliance upon defendants' alleged misrepresentations, an essential element in a claim of fraud. *See Caputo*, 267 F.3d at 191.

*Caputo*, 267 F.3d at 191 (listing the elements of common-law fraud). The problem for these plaintiffs, however, is that they have not pleaded the fraud with even the slightest amount of particularity. *See* Fed. R. Civ. P. 9(b).

"We interpret 'Rule 9(b) as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *See Bennett*, 607 F.3d at 1100 (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)). Plaintiffs' allegations fall well short of this pleading requirement.

The complaint avers in relevant part that "[n]umerous Plaintiffs specifically asked (orally and in writing) [defendants] for assurances that they would receive the same T.A.P. benefits as all other . . . U.S. Steel employees. In response, one or more of [defendants] promised the Plaintiffs that they would receive the same such benefits, made representations, and provided false, inaccurate, and/or misleading information to the Plaintiffs." This allegation omits entirely the time and place of the alleged statements. It also fails to allege the speaker of the alleged statements, instead referring vaguely only to "defendants," of which there are many in this case.[8] *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (noting that Rule 9(b)'s heightened pleading requirements require a plaintiff who pleads fraud to identify the speaker of the statement); *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (holding that the plaintiff's failure to connect allegations of fraudulent representations to particular defendants, attributing representations simply to the "defendants," could not satisfy Rule 9(b)'s particularity requirement); *see also United States ex rel. Branhan v. Mercy Health Sys. of Sw. Ohio*, 188 F.3d 510, 1999 WL 618018, at *9 (6th Cir. Aug. 5, 1999) (unpublished table decision) (Clay, J., concurring in part and dissenting in part) (noting that "Rule 9(b) does not permit a plaintiff to allege fraud by indiscriminately grouping all of the individual defendants into one wrongdoing monolith" (citation and internal quotation marks omitted)).

---

[8]Although this appeal only involves three defendants, the complaint named sixteen.

For these reasons, plaintiffs' claims for breach of ERISA fiduciary duty against U.S. Steel and the Fund are time-barred, and the district court properly dismissed them for failure to state a claim for relief.

IV.

Even though the above analysis applies with equal force to plaintiffs' ERISA fiduciary-duty claim against USW, USW never argued below that the claim was time-barred. It has therefore forfeited that basis for dismissal for purposes of this appeal. *See Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 242 n.5 (6th Cir. 2011). Nevertheless, plaintiffs' claim against USW fails because plaintiffs have not plausibly alleged that USW is an ERISA fiduciary.

The threshold question in all cases charging breach of ERISA fiduciary duty is whether the defendant was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). "[F]or purposes of ERISA, a 'fiduciary' not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets." *Moore v. LaFayette Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006); *see* 29 U.S.C. § 1002(21)(A); *see also Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101-02 (9th Cir. 2004) (noting "that an individual or entity can still be found liable as a 'de facto' fiduciary if it lacks formal power to control or manage a plan yet exercises informally the requisite 'discretionary control' over plan management and administration").

The complaint fails to plausibly allege that USW is an ERISA fiduciary. First of all, USW is not named in plan documents as a fiduciary. Plan documents demonstrate, rather, that U.S. Steel has delegated to *the Fund* the fiduciary function of administering plan benefits to participants. Moreover, the complaint contains only the most conclusory of allegations that USW exercises discretionary control or authority over plan administration, management, or assets, so it cannot be considered a de facto fiduciary under ERISA.

Seemingly recognizing the inadequacy of their allegations, plaintiffs seek to affix a fiduciary status to USW on the un-pleaded theory that USW explained plan benefits and business decisions regarding plan benefits to plaintiffs and made assurances to those considering retirement. They cite *Bouboulis v. Transport Workers Union of America*, 442 F.3d 55 (2d Cir. 2006), for support. *Bouboulis* involved imposing a fiduciary status on an employer who made assurances regarding plan benefits to it employees. *Id.* at 65. The court did so because the employer was also the plan's administrator, and employees could have reasonably believed that their employer was communicating to them in both capacities (employer and administrator). *See id.* (citing *Varity Corp. v. Howe*, 516 U.S. 489, 503 (1996)). Here, however, USW was plaintiffs' *collective bargaining representative*, not their employer. And there is no basis for plaintiffs to have reasonably believed that USW was acting in the capacity of a plan administrator when it allegedly made assurances. Indeed, plaintiffs were specifically informed in 1999 that *the Fund* would again be administering their pension plan. USW is not an ERISA fiduciary. The district court correctly dismissed this claim.

V.

In count three of their complaint, plaintiffs assert a claim for equitable estoppel. The district court dismissed this claim on the ground that this court had yet to recognize such a theory of liability in the context of a pension plan (as opposed to a welfare benefit plan). After the district court entered judgment, however, we recognized a claim for equitable estoppel in the context of a pension plan. *See Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436 (6th Cir. 2010). Unfortunately for plaintiffs, the special facts that gave rise to liability in *Bloemker* are absent here.

In *Bloemker*, the plaintiff decided to retire early after he was told by the plan administrator in a certified letter that he would receive a certain amount in pension benefits each month during retirement. *Id*. at 439. After receiving benefits for more than a year in an amount consistent with what he was initially told, the plaintiff was advised that, due to a computer programming error, the administrator had been overpaying him approximately $500 per month. The administrator asked the plaintiff to return more than

$11,000 in overpayments. *Id.* The plaintiff sued the plan administrator under ERISA and asserted a claim of equitable estoppel, but the district court dismissed the claim. Reversing, we held that a plaintiff can invoke equitable estoppel in the pension-plan context if the plaintiff can demonstrate the traditional elements of estoppel plus (1) a written representation; (2) plan provisions which, although unambiguous, do not allow for individual benefit calculation; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel. *Id.* at 444. We found that the plaintiff had met each of these requirements.

The only plaintiffs in any position to assert a claim of equitable estoppel here are those who participated in the TAP retirement program, because it is only they who allegedly relied to their detriment on the alleged representations by the Fund. *See id.* at 442 (stating that reliance is an element of traditional estoppel). Moreover, only the Fund can potentially be estopped from doing anything, because it is the only defendant that pays pension benefits in accordance with plan documents. *See generally Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1299 (6th Cir. 1991) ("Equitable estoppel . . . precludes a party from exercising contractual rights because of his own inequitable conduct toward the party asserting the estoppel.").

These plaintiffs cannot state a claim for equitable estoppel against the Fund for two reasons. First, plaintiffs have not adequately pleaded a claim of traditional equitable estoppel, which requires that the defendant's actions "contain an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud." *Bloemker*, 605 F.3d at 443 (citation, internal quotation marks, and alteration omitted). As explained above, plaintiffs have not satisfied their burden to plead fraud with particularity.

Second, plaintiffs cannot satisfy the justifiable-reliance requirement of an estoppel claim. A reason we initially hesitated to recognize an estoppel theory when the terms of the plan are unambiguous is because a participant's reliance on a representation regarding the plan "'can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents.'" *Id.* at 443 (quoting *Sprague*

*v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (en banc)).  We found this reason inapplicable in *Bloemker*, however, because it was impossible for the plaintiff to determine his correct pension benefit due to the complexity of the actuarial calculations and his lack of knowledge about the relevant actuarial assumptions used.  *Id.*  It was not a situation where a clear answer to the plaintiff's question about his plan was easily answered by reference to plan documents, and the information provided by the plan administrator – how much the plaintiff would receive each month in benefits – could not be contradicted by the plan documents.  Therefore, it was justifiable for the plaintiff to rely on the letter calculating the monthly amount.  *Id.*

Here, by contrast, plaintiffs do not allege that the plan documents are ambiguous on the point at issue here – which years can be included under the best five years method.  Nor do they allege that the documents prevent them from calculating their own benefits.  Indeed, plaintiffs were admittedly aware of *precisely how* their benefits would be calculated under the plan:  by using the annual income from the participant's best five years up to and including 1999.  They simply contend that pension benefits should be calculated in a way different from what is called for in plan documents.  Such allegations cannot form a basis for an ERISA estoppel claim.  Therefore, plaintiffs' reliance on alleged statements that contradict plan documents (which are unambiguous on the point) was not justifiable as a matter of law.  Plaintiffs have failed to state a claim for equitable estoppel.

## VI.

In count four, plaintiffs claim that the Fund failed to furnish plan documents upon request.  The district court concluded, based upon a review of letters attached to the Fund's motion to dismiss, that this claim was baseless.

ERISA provides that an "administrator shall, upon written request of any participant or beneficiary, furnish a copy [of certain specific plan documents] or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  An administrator who fails or refuses to comply with a request may be held personally liable for the failure.  *Id.* § 1132(c)(1)(B).

The relevant allegation in this count states as follows:

> On or about March 11, 2009, the Plaintiffs sent written requests to all of the Defendants[9] for several Plan and Fund-related Documents including, but not limited to, Summary annual reports, Summary Plan descriptions, Form 5500s, Trust Agreement, Rules and Regulations of the Pension Fund, individual Participant benefit calculations, and 204(h) notices. However, as of the date this complaint was filed, each Defendant has either failed to respond or provided inadequate responses to those requests.

Attached to the Fund's motion to dismiss was plaintiffs' letter request, as well as the Fund's response. In their opposition brief in the district court, plaintiffs only argued that the letters could not be considered without converting the motion into one for summary judgment. It recognized that matters referenced in the complaint and central to a plaintiff's claim can generally be considered on a motion to dismiss, but argued that they never referenced the letters in their complaint and that the genuineness and admissibility of the letters were issues of fact not appropriate for resolution under Rule 12(b)(6). Plaintiffs never argued that the Fund's response to their request was legally inadequate under ERISA or that the response was untimely.

The district court correctly concluded that both letters were sufficiently referenced in the complaint and central to plaintiffs' claim so as to be properly considered on a motion to dismiss. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). As noted above, paragraph 85 of the complaint expressly mentions plaintiffs' March 11 request and alleges that "each Defendant has either failed to respond or provided *inadequate responses* to those requests." (Emphasis added.) That is a sufficient reference to the response, we believe, and the adequacy of the response *is the entire claim*, let alone central to it.

---

[9]Despite plaintiffs' reference to "Defendants," which would include U.S. Steel, the Fund, and USW, the statutory duty they seek to enforce here applies only to plan administrators, *see* 29 U.S.C. § 1024(b)(4), and the Fund is the only such administrator in this action. *See Hiney Printing Co. v. Brantner*, 243 F.3d 956, 961 (6th Cir. 2001) ("The law in this Circuit is clear that only a plan administrator can be held liable under section 1132(c)." (citation, internal quotation marks, and alteration omitted)).

Plaintiffs now argue (for the first time on appeal) that the Fund's response was legally inadequate because it did not include documents that fall within section 1024(b)(4)'s residual clause. *See* 29 U.S.C. § 1024(b)(4) (administrator must produce, upon request, "other instruments under which the plan is established or operated"). The Fund's response demonstrates that it furnished all the requested documents, except for regulatory filings and other documents provided to various governmental agencies, regarding the plan. It also withheld requested "minutes, notes, and reports of all meetings of the Board of Trustees and negotiating committees since January 1, 1969[,]" because the request was overly broad. Plaintiffs do not challenge these withholdings. Rather, they contend that the Fund failed to furnish: (1) actuarial valuation reports; (2) "procedures"; and (3) "calculations." Because this argument was not raised below, it is forfeited on appeal. *See Poplar Creek Dev.*, 636 F.3d at 242 n.5. Nevertheless, the argument is meritless.

With respect to the actuarial valuation reports, plaintiffs concede that they never specifically requested them. Accordingly, the Fund had no legal duty to produce them. *See* 29 U.S.C. § 1024(b)(4) (noting that duty to furnish plan documents arises "*upon written request* of any participant or beneficiary"). But plaintiffs say their lack of a request poses no problem because these reports so obviously fall within the residual clause that the Fund had a duty to produce them pursuant to a general request for "plan documents."

To be sure, we have held that actuarial valuation reports do fall under the residual clause of § 1024(b)(4) and must be furnished upon request. *See Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1069-70 (6th Cir. 1994). And we have further held that the failure to request a specific document by name does not justify withholding the document when it "so obviously contains the information" described in the request that the administrator either knows or should know that it was obliged to produce it. *Id.* at 1071. For example, the plaintiffs in *Bartling* asked for "benefit computation worksheets." The plan administrator responded that such documents did not exist because computations were performed by a computer. The administrator did have in its possession, however, a

written "Calculation Procedure," which described in step-by-step detail the procedures followed to derive a participant's benefits under the plan and was equivalent to what plaintiffs had specifically requested. *Id.* at 1070. We stated that "[i]mposing a burden upon Plaintiffs to ask for the Calculation Procedure by name rather than by description would be contrary to the spirit of § 1024(b)(4)." *Id.* at 1071.

Here, plaintiffs have pointed to no specific request in their March 11 letter that so obviously refers to the actuarial valuation reports. If they wish to take advantage of the leniency that *Bartling* prescribes, they must make a minimal effort on appeal to identify which of their specific requests reasonably embodies the actuarial valuation reports. Indeed, given that it has been the law in this circuit since 1994, when *Bartling* was decided, that such reports must be furnished upon request, the Fund reasonably could have concluded that, had plaintiffs wanted the reports, they would have clearly requested them.

With respect to the "procedures" and "calculations" plaintiffs apparently requested but never received, plaintiffs do not identify specifically what they are talking about or explain why the requests were not covered by the Fund's response. Their request sought "[a]ll documents . . . regarding . . . benefit calculations . . . ." The Fund's letter in response states: "[A]ttached are the following plan documents that are required to be provided under section 104(b)(4) of ERISA *and copies of the most recent benefit calculations* previously prepared for your clients." (Emphasis added.) The response obviously covers the requested calculations. As for "procedures," nowhere in plaintiffs' request did they ask for "procedures" by itself, and they have not specifically identified what document they want. If they are referring to the procedures for determining pension benefits, the furnished documents were responsive. *See* R.21-3 at 2 ("Accordingly, the documents provided should enable you to determine your clients' eligibility for benefits, the amount of their benefits, and their rights under the Plan."). If the response was insufficient, plaintiffs should have availed themselves of the Fund's offer to provide more documents upon a specific request. *See id.* ("If you believe your

clients are entitled to receive additional documents, please send me a written request clearly describing such documents."). Therefore, count four was properly dismissed.

## VII.

In count two, plaintiffs assert a claim for equitable accounting, restitution, and "other equitable relief." The district court dismissed this count on the ground that it was entirely derivative of the fiduciary-duty claims the court had dismissed.

According to plaintiffs, count two is premised on 29 U.S.C. § 1132(a)(3), which permits a participant or beneficiary to obtain injunctive or "other appropriate equitable relief" to redress ERISA violations or enforce the plan. By its terms, however, § 1132(a)(3) speaks of *remedies* or appropriate forms of *relief*. Plaintiffs cannot obtain such relief in the abstract; they must first establish that at least one defendant breached the plan documents or violated ERISA in some other way. *See Peacock v. Thomas*, 516 U.S. 349, 353 (1996) ("Section [1132(a)(3)] does not . . . authorize 'appropriate equitable relief' *at large*, but only 'appropriate equitable relief' for the purpose of 'redressing any violations or enforcing any provisions' of ERISA or an ERISA plan." (citation, internal quotation marks, alterations, and ellipsis omitted)). And because plaintiffs have failed to state a violation of ERISA, they are not entitled to any equitable relief.

## VIII.

Finally, counts five through eight in plaintiffs' complaint assert claims under Ohio's common law for fraud, negligence, breach of fiduciary duty, and promissory estoppel. The district court concluded that ERISA preempted all of these claims.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Congress intended for ERISA to preempt only traditional state-based laws that implicate relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir. 2007). "[W]hen a state law claim may fairly be viewed as an alternative means of

recovering benefits allegedly due under ERISA, there will be preemption." *Briscoe v. Fine*, 444 F.3d 478, 498 (6th Cir. 2006) (citation and internal quotation marks omitted). Moreover, if resolution of the state-law claim "necessarily requires evaluation of the plan and the parties' performance pursuant to it, the claim is preempted." *Thurman*, 484 F.3d at 862 (citation and internal quotation marks omitted).

Plaintiffs anticipated ERISA-preemption by prefacing their allegations regarding the common-law claims with the following: "In the event that any of the Plaintiffs' claims do not relate to the Pension Plans or any Defendant is not an ERISA fiduciary, the Plaintiffs assert the following common law cause of action for [fraud/negligence/breach of fiduciary duty/promissory estoppel]." The problem, however, is that each of plaintiffs' common-law claims *does relate* to the pension plan. Plaintiffs seek to have their plan administered and their pension benefits calculated in a way that is different from what the plan documents expressly require, based upon alleged breaches of legal duties created and imposed by state law. ERISA's broad preemptive reach does not countenance this. Furthermore, these common-law claims would require the court to consider the plan documents to determine whether there had been any breaches of these state-law duties, a further indication that ERISA preempts these claims. The district court properly dismissed plaintiffs' common-law claims.

## IX.

For these reasons, we affirm the judgment of the district court.